# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

JAMES R. LANGMEAD,

                                        Plaintiff,

                -vs-

MONROE COUNTY OFFICE OF THE SHERIFF,          DECISION & ORDER
SHERIFF PATRICK M. O'FLYNN, CHIEF
DEPUTY GARY CAIOLA, CHIEF DEPUTY               11-CV-6003-CJS
STEVEN SCOTT, OTHER KNOWN OR
UNKNOWN EMPLOYEES OF THE MONROE
COUNTY OFFICE OF THE SHERIFF,

                                        Defendants.[1]

## APPEARANCES

For Plaintiff:                  Jeffrey Wicks, Esq.
                                Jeffrey Wicks, PLLC
                                36 West Main Street Suite 318
                                Rochester, New York 14614
                                (585) 325-6070

For Defendants:                 Howard A. Stark, Esq.
                                Monroe County Department of Law
                                39 West Main Street Room 307
                                Rochester, New York 14614
                                (585) 753-1433

## INTRODUCTION

**Siragusa, J.** This is a civil rights case brought by a former sheriff's deputy against

the Monroe County Sheriff ("Sheriff") and his Office and other employees of the Sheriff's

Office. Plaintiff James R. Langmead ("Langmead") alleges that the Sheriff is incorrectly

---

[1]Plaintiff has sued the defendants in both their official and individual capacities.

interpreting New York State Public Officers Law § 3(2)(b), by requiring that his deputies reside within Monroe County, despite an exception in the law for police officers. Now before the Court is Langmead's motion, ECF No. 2, for a preliminary injunction and declaratory relief. For the reasons stated below, the application is denied.

## FACTUAL BACKGROUND

Langmead challenged the Sheriff's interpretation of New York Public Officers Law § 3(2)(b) in a 2006 action filed in New York State Supreme Court. The Honorable Harold L. Galloway, Justice of the New York State Supreme Court, Seventh Judicial District, issued a decision and order on May 4, 2007, in which he determined that Langmead's challenge was precluded by the four-month statute of limitations applicable to actions brought under New York Civil Procedure Law and Rule, Article 78. Justice Galloway dismissed Langmead's action without the need to reach the merits.[2] *Langmead v. O'Flynn*, No. 06/13336 (N.Y. Sup. Ct. May 24, 2007). Langmead filed a Notice of Appeal on June 11, 2007, but there is no evidence in the record that the Appellate Division, Fourth Department, considered the matter.[3]

In the application pending before the Court, Langmead seeks the following relief:

I. Injunctive relief in the form of Plaintiff's reinstatement to his position as a Deputy Sheriff within the Monroe County Sheriffs Office;

---

[2]Justice Galloway, however, did include comments on the merits which he characterized "as dicta only." Dec. & Order, *Langmead v. O'Flynn*, No. 06/13336 (N.Y. Sup. Ct. May 24, 2007), at 4.

[3]The Sheriff's memorandum of law, at 5, indicates that the appeal was never perfected.

II. Declaratory relief declaring that New York Public Officers Law § 3.2-b[4] is unconstitutional and violates due process in its application as no rational basis exists to exclude deputy sheriffs within the police bureau from the statutory exemption to a residency requirement when other New York statutes include deputy sheriffs within their definition of "police officers" and both Monroe County and other New York counties routinely allow deputy sheriffs to reside in contiguous counties pursuant to the statutory exemption for police officers.

III. Declaratory relief declaring that New York Public Officers Law § 3.2-b is unconstitutionally vague as it fails to clearly define what living situations satisfy the residency requirement.

Langmead's Notice of Motion for Injunctive and Declaratory Relief at 1–2, Jan. 4, 2011, ECF No. 2.

Langmead has made claims pursuant to the Due Process clause of the Constitution, alleging selective enforcement of the residency requirement within the Office of the Sheriff, Compl. at 9 (First Cause of Action), Jan. 4, 2011, ECF No. 1; a second Due Process claim based on his allegation that no rational basis exists for treating deputies in a police bureau differently from police officers under New York Public Officers Law section 3(2)(b), Compl. at 10 (Second Cause of Action); and a claim under 42 U.S.C. § 1983, alleging that Defendants acted under color of law in enforcing a residency policy that deprived Langmead of his property interest as an employee in violation of the Fifth and Fourteenth Amendments, as well as the common law of the United States, and the common law and constitution of New York State, Compl. at 13 (Third Cause of Action).

---

[4]Langmead's papers refer to Public Officers Law §3(2)(b) in various ways, including as "3.2-b" in the Notice of Motion, ECF No. 2, and "3(2)(b)" in Wicks Decl. ¶ 3, ECF No. 2-1.

This case was referred to mediation on September 26, 2012. Mediation took place on February 14, 2013, and did not result in resolution of the case. *See* Mediation Certificate, Feb. 14, 2013, ECF No. 22.

## STANDARDS OF LAW

### *Injunctive relief*

"A party seeking injunctive relief ordinarily must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33 (2d Cir.1995). In *Tom Doherty*, the Second Circuit also discussed the requirements for a mandatory injunction:

> However, we have required the movant to meet a higher standard where: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits....

> 1. Mandatory Injunctions

> The typical preliminary injunction is prohibitory and generally seeks only to maintain the *status quo* pending a trial on the merits. *See Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985). A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act. *See id.* As noted above, this distinction is important because we have held that a mandatory injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Id.* (internal quotations and citations omitted); *see also SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990) (injunction going beyond preservation of *status quo* requires "a more substantial showing of likelihood of success");

*Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441 (2d Cir. 1977). The "clear" or "substantial" showing requirement -- the variation in language does not reflect a variation in meaning -- thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success. *See Unifund SAL*, 910 F.2d at 1039.…

Moreover, many mandatory injunctions can be stated in seemingly prohibitory terms. *See, e.g., Unifund SAL*, 910 F.2d at 1040 (imposing "substantial showing of likelihood of success" standard because "though the order is prohibitory in form, rather than mandatory, it accomplishes significantly more than preservation of the status quo").

2. Providing All the Relief Sought

A heightened standard has also been applied where an injunction -- whether or not mandatory -- will provide the movant with substantially "all the relief that is sought." *Abdul Wali*, 754 F.2d at 1026. *See* 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2948, at 445-47 (1973); *see also Abdul Wali*, 754 F.2d at 1025-26. However, the terms "all the relief to which the movant would be entitled" or "all the relief sought" have also been the source of confusion because, read literally, they appear to describe any injunction where the final relief for the plaintiff would simply be a continuation of the preliminary relief. *See, e.g., Johnson v. Kay*, 860 F.2d 529, 540-41 (2d Cir. 1988). However, "this application of the rule seems hard to justify . . . [because] the fact that the plaintiff would get no additional relief if he prevailed at the trial on the merits should not deprive him of his remedy." Developments in the Law -- Injunctions, 78 Harv. L. Rev. 994, 1058 (1965).

If the use of a heightened standard is to be justified, the term "all the relief to which a plaintiff may be entitled" must be supplemented by a further requirement that the effect of the order, once complied with, cannot be undone. A heightened standard can thus be justified when the issuance of an injunction will render a trial on the merits largely or partly meaningless, either because of temporal concerns, say, a case involving the live televising of an event scheduled for the day on which preliminary relief is granted, or because of the nature of the subject of the litigation, say, a case involving the disclosure of confidential information. The bottom line is that, if a preliminary injunction will make it difficult or impossible to render a meaningful remedy to a defendant who prevails on the merits at trial, then the plaintiff should have to meet the higher standard of substantial, or clear showing of, likelihood of success to obtain preliminary relief. Otherwise, there is no

reason to impose a higher standard. *See Abdul Wali*, 754 F.2d at 1026 (delivery of a prison report to prisoners that would be immediately read would moot a trial on the merits).

*Doherty Assoc., Inc. v. Saban Entertainment, Inc.*, 60 F.3d at 34–35.

### Declaratory Judgment

In reviewing a motion for a declaratory judgment, the Court refers to the pertinent text of the Federal Declaratory Judgments Act:[5]

> (a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (1992). In *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1000 (2d Cir. 1969), the Second Circuit stated, "'it is well settled that the trial court's decision to exercise declaratory jurisdiction is a discretionary one." *Id*. at 1000 (quoting *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 505 (2d Cir. 1968); *accord Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992). In *Continental Cas. Co.*, the Second Circuit, referring to its *Broadview* decision, held that, "a court must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co.*, 977 F.2d at 737. The district court in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Doe*, 868 F. Supp. 532, 535 (S.D.N.Y. 1994), observed that,

---

[5]48 Stat. 955; codified at 28 U.S.C. §§ 2201–02.

"[s]ome courts have indeed acknowledged that temporary or preliminary declaratory relief is available to litigants as a provisional remedy. *See generally, Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 276 (7th Cir.1992) (Posner, J.) (citing cases in which some courts have found such relief available though others disagree and finding that preliminary declaratory relief is not appealable); *Delaughter v. Borden Co.*, 431 F.2d 1354, 1358 (5th Cir.1970)." *Id.* at 535.

## ANALYSIS

### *Injunctive Relief*

In order for the Court to issue a mandatory injunction ordering that Langmead be returned to full duty, Langmead must meet the stringent requirements set out above. He does not.

A mandatory injunction of the type Langmead seeks should only be issued "upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Abdul Wali*, 754 F.2d at 1025 (internal quotations and citations omitted). Langmead has not made a clear showing of entitlement to relief.

### *First Cause of Action*

Langmead has claimed that the Sheriff selectively enforced the residency requirement. (Compl., at 9.) Such a claim is properly plead under the Equal Protection Clause of the Constitution. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."). Such claims were

recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 n.* (2000) (*per curiam*) ("Whether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis.").

In his complaint, Langmead claims he was treated differently from others similarly situated and that there is no rational basis for the difference in treatment. In order to prove a class-of-one claim, a plaintiff

> must establish that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *abrogated on other grounds, Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).

*Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (footnote omitted). In *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008), Engquist alleged that,

> the defendants discriminated against her on the basis of her race, sex, and national origin. She also brought what is known as a "class-of-one" equal protection claim, alleging that she was fired not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for "arbitrary, vindictive, and malicious reasons." App. 10.

*Id.*, at 595. Engquist argued that the Equal Protection Clause, "forbids public employers from irrationally treating one employee differently from others similarly situated, regardless of whether the different treatment is based on the employee's membership in a particular class." *Id.* at 597.

The Supreme Court rejected her argument and held that the class-of-one theory of liability under the Equal Protection clause "has no place in the public employment context." *Id.*, at 594. The Supreme Court reasoned that,

> "the government as employer indeed has far broader powers than does the government as sovereign." *Waters v. Churchill*, 511 U.S. 661, 671 (1994) (plurality opinion). "[T]he extra power the government has in this area comes from the nature of the government's mission as employer. Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible." *Id.*, at 674-675. *See also Connick v. Myers*, 461 U.S. 138, 150-151 (1983) (explaining that the government has a legitimate interest "in 'promot[ing] efficiency and integrity in the discharge of official duties, and [in] maintain[ing] proper discipline in the public service'" (*quoting Ex parte Curtis*, 106 U.S. 371, 373 (1882); (alterations in original)). "The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer." *Waters*, *supra*, at 675 (plurality opinion). Given the "common-sense realization that government offices could not function if every employment decision became a constitutional matter," *Connick*, *supra*, at 143, "constitutional review of government employment decisions must rest on different principles than review of … restraints imposed by the government as sovereign," *Waters*, *supra*, at 674 (plurality opinion).

*Engquist*, 553 U.S. at 598–99.

The Court is not convinced that Landmead's complaint makes a clear showing of entitlement to relief under his class-of-one Equal Protection claim, especially in light of the Supreme Court's decision in *Engquist*. Consequently, mandatory injunctive relief is not warranted.

### Second Cause of Action

In his second cause of action, Langmead challenges the Sheriff's interpretation of New York Public Officers Law § 3(2)(b), alleging that no rational basis exists for treating

deputies in a police bureau differently from police officers in a police department. The

Sheriff responds that Monroe County does not have a police force, and, as such, § 3(2)(b)

does not apply to the Sheriff by its own terms. Section 3(2)(b) states in relevant part:

> Neither the provisions of this section or of any general, special or local law, charter, code, ordinance, resolution, rule or regulation, requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he shall be chosen or within which his official functions are required to be exercised, shall apply to the appointment of a person as a member of the police force of any political subdivision or municipal corporation of the state if such person resides…(b) in a county within the state contiguous to the county in which such political subdivision or municipal corporation is located….

N.Y. Pub. Off. L. § 3(2)(b) (2010). The Sheriff argues that,

> the Public Officers Law §3(2)(b) exemption is applicable to "a member of the police force of any political subdivision or municipal corporation." Monroe County Sheriff's deputies are not members of a police force of Monroe County or any other political subdivision or municipal corporation. *See*, Point 3, below. Consequently, the Public Officers Law §3(2)(b) exemption as applied to police and sheriff's deputies does not implicate the Equal Protection Clause.

Sheriff's Mem. of Law, at 10. In *Mazzo v. County of Monroe*, 58 A.D.2d 1017 (N.Y. App.

Div. 4th Dep't 1977), the Appellate Division held that § 3(2) did not exempt a deputy sheriff

from residing in the county of his employment. That court wrote:

> Deputy Sheriffs are local officers within the purview of the Public Officers Law (*Matter of Winkler v Sheriff of Queens County*, 256 App Div 770; *see*, *also*, Public Officers Law, § 2.) One of the statutory qualifications for holding local office is that the officer be a resident of the political subdivision or municipal corporation of the state within which his official functions are required to be exercised (Public Officers Law, § 3, subd 1). Members of the "police force of any political subdivision or municipal corporation" are exempt from this requirement if they live in a county within the state which is "contiguous" to the political subdivision or municipal corporation by which they are employed (Public Officers Law, § 3 subd 2). Similar to the

requirements of these sections are the provisions of section 30 (subd 1, par d; subd 4) of the Public Officers Law which state that a local public office becomes vacant when a qualified incumbent ceases to be a resident and is not exempt from the residence requirements of the statute.  The dispositive issue on this appeal is whether the Sheriff's department is a police force of the county and whether a Deputy Sheriff, as a member of the Sheriff's department, is therefore exempt from the residence requirements of the statute. In an effort to resolve the issue, both parties cite various statutes and rulings either identifying Sheriff's deputies with local police officers or distinguishing them from local police officers. A Sheriff's department does exercise police functions, but it is more than a police department and the Sheriff and his deputies have traditionally been distinguished from other police forces. The Sheriff is a constitutional officer (NY Const, art XIII, § 13) acting both as an officer of the court and a conservator of the peace (County Law, § 650). The deputies act in the service of the public or the municipality in the performance of criminal duties, but they act as the personal agent of the Sheriff in the performance of various civil duties (*Matter of Flaherty v. Millikin*, 193 NY 564; *Isereau v. Stone*, 3 AD2d 243). Because of this identity between the Sheriff and his deputies, the Sheriff has broad discretion in appointing his deputies and removing them which differs from employment rights governing members of a police force (*see Matter of Sirles v. Cordary*, 49 AD2d 330, *aff'd.* 40 NY2d 950; *Amico v. Erie County Legislature*, 36 AD2d 415, *aff'd.* 30 NY2d 729). These broader duties of the deputies and broader responsibility of the Sheriff for their acts have traditionally resulted in distinguishing them from other police officers. Indeed, in enacting the exemptions found in section 3 of the Public Officers Law, the Legislature had no difficulty in specifying that special Deputy Sheriffs were exempt from the residency requirements of the statute (§ 3, subd 2-b), thereby indicating that it considered a specific exemption for that class of Deputy Sheriffs necessary and that they were not otherwise exempt by the provisions of subdivision 2 of section 3 as members of a police force. We think the language of the exemption is not broad enough to include Deputy Sheriffs and that the Sheriff may lawfully discipline or remove a deputy who violates a departmental ruling requiring that deputies be residents of the county. Such residence requirements do not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution (*see Detroit Police Officers Assn. v. City of Detroit*, 385 Mich 519, *cert. den.* 405 U.S. 950; and *see*, *also*, *McCarthy v. Philadelphia Civ. Serv. Comm.*, 424 U.S. 645).

*Mazzo v. County of Monroe*, 58 A.D.2d 1017–18. The Supreme Court has upheld the kind of residency requirement imposed by the Sheriff and § 3(2) here. *See McCarthy v. Philadelphia Civil Service Comm'n*, 424 U.S. 645 (1976) (upholding a City of Philadelphia regulation requiring city employees to be residents of the city). Further, the statute is clear, especially in light of the Fourth Department's interpretation in *Mazzo*, contrary to Lagmead's argument. Langmead Mem. of Law at 3. That the exemption in subdivision b does not apply to Langmead is also clarified by the statute's inclusion of specific exemptions to the residency requirement for deputies in various counties in New York State. N.Y. Pub. Off. L. § 3(2), (41), (48), (49), (50) & (52). If the exemption in subdivision b applied generally to deputy sheriffs, no such specific exemptions would be required. Thus, Langmead is unlikely to prevail on his constitutional challenge to the Sheriff's interpretation of the applicability of § 3(2)'s residency requirement.

Langmead also argues that, "New York counties demonstrate inconsistencies in the application of the Public Official Law between one another and within each governmental unit. This inconsistent treatment between police and sheriff's deputies flows directly from inconsistent New York state legislation." Langmead Mem. of Law at 8. The Court finds that even assuming his allegations are true, it does not support a mandatory injunction reinstating Langmead to his position pending the final outcome of this litigation.

***Third Cause of Action***

In *McCarthy*, the Supreme Court upheld a residency requirement that the plaintiff challenged "as violative of his federally protected right of interstate travel." *McCarthy*, 424 U.S. at 645. In the case before the Court, Langmead also challenges the residency

requirement under the Fifth and Fourteenth Amendments as a deprivation of his property interest. Langmead adds in the common law of the United States and of New York State, and the New York State Constitution. Compl. at 13. His memorandum of law, and reply memorandum of law, however, do not specifically discuss this theory of potential liability. His memorandum mentions "property" only with respect to the ownership of property by a Deputy Sears. Langmead Mem. of Law at 4; Reply Mem. of Law at 5. Without Langmead's development of this theory, the Court is unable to conclude that it provides a likely basis for liability.

### *Injunctive Relief*

As demonstrated above, Langmead is unlikely to prevail on his claims. Therefore, the Court finds no basis to issue a mandatory injunction.

Second, Langmead has not shown that extreme or very serious damage will result from a denial of preliminary relief. He argues in his memorandum of law that:

> Despite his almost twenty years of devoted service, Plaintiff's entire retirement has been jeopardized. (Langmead Dec. - 7 7 26-28 ) Furthermore, the circumstances under which he was compelled to resign taint his ability to obtain other work for which he is highly qualified. (Langmead Dec. - 7 7 26-28 ) Indeed, the timing of his resignation could not have been worse at a time when the recent financial melt-down has compelled many state and local governments to freeze hiring.

Langmead Mem. of Law at 2. Reinstating Langmead now, and assuming he could complete five months of service, would entitle him to acquire full pension benefits. Yet, as the Sheriff points out in his memorandum of law, and Langmead concedes in his Reply memorandum of law, he is already entitled to reduced retirement benefits, although he cannot collect them for another two years. If, however, the Court should issue a declaratory

judgment in Langmead's favor, it could order his reinstatement at a later date. Nothing in Langmead's declaration or his attorney's, or his memoranda of law, indicates that if he were restored to duty he would not be able to work for five additional months and earn a full retirement. As to Langmead's arguments that he will be out of work for the duration of this litigation, during a time of "struggling national and state economies," that his forced resignation damaged his reputation and has made it difficult for him to find work, and that he has gone into debt and faces foreclosure, those consequences do not justify, in the Court's mind, issuing a mandatory injunction. Accordingly, the Court sees no urgent need to alter the status quo to avoid extreme or very serious damage.

### *Declaratory Judgment*

As outlined and discussed above, Langmead's memorandum of law makes three arguments for relief. First, he contends that the residency requirements are only selectively enforced in Monroe County, and in New York State. Second, he asserts that there is no rational basis for § 3(2)'s distinction between deputy sheriffs and police officers. Third, he argues that § 3(2) is unconstitutionally vague.

As discussed above, Langmead's "class of one" equal protection claim with regard to his selective enforcement assertions is foreclosed by the case law. *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) ("The Supreme Court's decision in *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) eliminated class-of-one claims for government employees."). With regard to his claim that § 3(2) has no rational basis for distinguishing between deputy sheriffs, like him, and police officers, the Fourth Department's decision in *Mazzo* precludes his argument. As

the Supreme Court reiterated in *McCarthy v. Philadelphia Civil Service Comm'n*, 424 U.S. 645, 646 (1976), "this kind of ordinance is not irrational." Finally, with regard to Langmead's argument that § 3(2)[6] is unconstitutionally vague, New York has had a similar residency requirement since 1888 and has defined residence as "that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return." N.Y. Election Law § 1-104(22); *see People v. Platt*, 3 N.Y.S. 367 (N.Y. Sup. Ct. 1888) (court relied on definition or resident for purposes of election law to determine where office holder resided). The exemption for "the police force of any political subdivision or municipal corporation of the state if such person resides," is inapplicable to a deputy sheriff. *Mazzo v. County of Monroe*, 58 A.D.2d 1017 (N.Y. App. Div. 4th Dept. 1977); *Myles v. Phillips*, 87 A.D.2d 614 (N.Y. App. Div. 2nd Dept. 1982), *aff'd*. 57 N.Y.2d 692 (1982), *rearg. den*. 58 N.Y.2d 689 (1982). The Court's ruling in *Myles* is on all fours with Langmead's claim, and there, the Second Department rejected a similar argument, writing:

> Petitioners argue that as Deputy Sheriffs, they are police officers and, thus, are exempt from the foregoing residency requirements. They rely upon that portion of subdivision 2 of section 3 of the Public Officers Law which declares that: "Neither the provisions of this section or of any general, special or local law, charter, code, ordinance, resolution, rule or regulation, requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he shall be chosen or within which his official functions are required to be exercised, shall apply to the appointment of a person as a member of the police force of any political subdivision or municipal corporation of the state". While petitioners may perform some criminal law enforcement activities, they are not members of the police force of any

---

[6]To the extent one could read Langmead's papers as alleging that Public Officers Law § 3-b is unconstitutionally vague, that section, applicable to "special peace officers," is not implicated in this case as Langmead has not alleged his is a "special peace officer."

political subdivision or municipal corporation as contemplated by section 3. Inasmuch as the petitioners were not qualified to hold the offices to which they were appointed because they were not residents of the County of Orange, the appellant Sheriff acted within his powers in terminating their appointments.

*Myles*, 87 A.D.2d at 615. The New York Court of Appeals affirmed the Second Department's determination "for the reasons stated in the memorandum at the Appellate Division." *Myles v. Phillips*, 57 N.Y.2d 692 (1982). The police officer exemption in New York Public Officers Law § 3(2)(b) is not vague and clearly does not apply to a deputy sheriff. Therefore, the Court, in exercising its discretion, declines to enter a declaratory judgment for Langmead.

## CONCLUSION

For the reasons stated above, Plaintiff's application for injunctive relief and a declaratory judgment, ECF No. 2, is denied.

IT IS SO ORDERED.

Dated:   July 15, 2013
          Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J.  SIRAGUSA
United States District Judge