UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES R. LANGMEAD,

                                                      Plaintiff,

                               DECISION & ORDER

                   -vs-

                               11-CV-6003-CJS

MONROE COUNTY OFFICE OF THE SHERIFF,
SHERIFF PATRICK M. O'FLYNN, CHIEF DEPUTY
GARY CAIOLA, CHIEF DEPUTY STEVEN SCOTT,
OTHER KNOWN OR UNKNOWN EMPLOYEES OF
THE MONROE COUNTY OFFICE OF THE SHERIFF,

                                           Defendants[1].
_____

**APPEARANCES**

| | |
|---|---|
| For Plaintiff: | Charles Steinman, Esq.<br>Jeffrey Wicks, PLLC<br>36 West Main Street, Suite 318<br>Rochester, New York 14614<br>(585) 325-6070 |
| For Defendants: | Adam M. Clark, Esq.<br>Deputy County Attorney<br>Monroe County Department of Law<br>39 West Main Street, Room 307<br>Rochester, New York 14614<br>(585) 753-1433 |

**INTRODUCTION**

    **Siragusa, J**. This is a civil rights case brought by a former sheriff's deputy against the Monroe County Sheriff ("Sheriff") and his Office and other employees of the Sheriff's Office. Plaintiff James R. Langmead ("Langmead") alleges that the Sheriff is incorrectly

---

[1]Plaintiff has sued the defendants in both their official and individual capacities.

interpreting New York State Public Officers Law Section 3(2)(b), by requiring that his deputies reside within Monroe County, despite an exception in the law for police officers. The Court previously denied Plaintiff's application for a preliminary injunction and declaratory judgment. *Langmead v. Monroe Cty. Office of Sheriff*, No. 11-CV-6003-CJS, 2013 WL 3759958, at *1 (W.D.N.Y. July 15, 2013). Now before the Court is the Sheriff's motion, ECF No. 37, seeking summary judgment. For the reasons stated below, the motion is granted.

## BACKGROUND

Langmead challenged the Sheriff's interpretation of New York Public Officers Law Section 3(2)(b) in a 2006 action filed in New York State Supreme Court. The Honorable Harold L. Galloway, Justice of the New York State Supreme Court, Seventh Judicial District, issued a decision and order on May 4, 2007, in which he determined that Langmead's challenge was precluded by the four-month statute of limitations applicable to actions brought under New York Civil Procedure Law and Rule, Article 78. Justice Galloway dismissed Langmead's action without the need to reach the merits.[2] *Langmead v. O'Flynn*, No. 06/13336 (N.Y. Sup. Ct. May 24, 2007). Langmead filed a Notice of Appeal on June 11, 2007, but there is no evidence in the record that the Appellate Division, Fourth Department, considered the matter.[3]

---

[2] Justice Galloway, however, did include comments on the merits which he characterized "as dicta only." Dec. & Order, *Langmead v. O'Flynn*, No. 06/13336 (N.Y. Sup. Ct. May 24, 2007), at 4. Justice Galloway's dictum concluded that "one separate branch of the Sheriff's Department ... is not a legal entity of its own...." County Ex. 11 at 82, ECF No. 37-2. Justice Galloway reasoned that since the Sheriff's Office has both civil and criminal law responsibilities, it was logical for the Legislature not to include it in the exemption as a "police force."

[3] The Sheriff's memorandum of law, at 5, indicates that the appeal was never perfected.

In his pleading, Langmead sets forth three causes of action as follows: first, a claim pursuant to the Due Process clause of the United States Constitution alleging selective enforcement of the residency requirement within the Office of the Sheriff, Compl. at 9 (First Cause of Action), Jan. 4, 2011, ECF No. 1; a second Due Process claim based on his allegation that no rational basis exists for treating deputies in a police bureau differently from police officers under New York Public Officers Law section 3(2)(b), Compl. at 10 (Second Cause of Action); and a claim under 42 U.S.C. Section 1983, alleging that Defendants acted under color of law in enforcing a residency policy that deprived Langmead of his property interest as an employee in violation of the Fifth and Fourteenth Amendments, as well as the common law of the United States, and the common law and constitution of New York State, Compl. at 13 (Third Cause of Action).

This case was referred to mediation on September 26, 2012. Mediation took place on February 14, 2013, but was not successful in resolving the case. *See* Mediation Certificate, Feb. 14, 2013, ECF No. 22.

The parties filed statements of fact pursuant to Western District of New York Local Rule 56. The following is taken from Defendants' Statement, ECF No. 37-3. The only objection lodged by Plaintiff was to paragraph 21, which the Court will address. Otherwise, Plaintiff admitted each of the statements listed below.[4]

> 1. Plaintiff began his employment with the Monroe County Sheriff's Office on September 30, 1991.
>
> 2. From his hire date until he resigned from employment on April 29, 2010, Plaintiff served as a Police Bureau Deputy in the Sheriff's Department.

---

[4] For ease of reading, the Court has omitted most of the references contained in the original Statement.

3. The Plaintiff was aware of Monroe County policy and New York State Law requiring him as an employee of the Sheriff's Office to be a resident of Monroe County.

4. Prior to 2004 Plaintiff resided in Monroe County.

5. In 2004 Plaintiff sold his house in Monroe County and purchased a house in Canandaigua, Ontario County.

6. Since he moved into the house in Canandaigua, the Plaintiff has not had any other residence.

7. In May of 2004, the Plaintiff had a meeting with Monroe County Sheriff Patrick O'Flynn to discuss the Monroe County residence requirement.

8. At the time of this meeting the Plaintiff had purchased the house in Canandaigua but had not yet moved in, and was residing with his girlfriend in South Bristol in Ontario County.

9. Later in 2004, the Plaintiff was investigated by the Sheriff's Office Internal Affairs Department ["IA"] related to his residence being outside the County.

10. As a result of that investigation Plaintiff was served with disciplinary charges due to his residence being outside the County.

11. The Plaintiff attended a plea meeting regarding those charges with Sheriff O'Flynn, several members of the Sheriff's Office Command Staff, and the Plaintiff's Union Attorney, Patrick Naylon.

12. As a result of this plea meeting and the Plaintiff's plea to the charge of living outside Monroe County the Plaintiff received a letter of reprimand dated December 3, 2004.

13. The letter of reprimand ordered the Plaintiff to establish residency within Monroe County within 30 days.

14. The Plaintiff submitted an employee change of data form and a special report to the Undersheriff with the address of Knollwood Manor Apartments at 22 Blackwatch Trail, Apartment 12, Town of Fairport, Monroe County.

15. The special report was filed in direct response to the letter of reprimand's requirement to establish residency within the County.

16. The Plaintiff did not ever pay any rent or deposit for an apartment at Knollwood Manor, he never stayed in any apartment at Knollwood Manor, he never had any of his possessions in any apartment at Knollwood Manor, he did not have a key to an apartment, and he never even entered the apartment that was allegedly his at Knollwood Manor.

17. As a part of training with the Monroe County Sheriff's Office, the Plaintiff also submitted the Blackwatch Trail address on a registration form to Monroe Community College.

18. In 2007 the Plaintiff sent an email to the Sheriff's Office that again claimed that 22 Blackwatch Trail was his address.

19. The Plaintiff remained registered to vote in Monroe County for the entire time of his residence outside Monroe County, and currently is living in Ontario County and registered to vote in Monroe County.

20. In 2006, while the Plaintiff was already living outside of Monroe County, he requested permission to "take up residency" outside the County.

21. The County Denied [sic] the Plaintiff's request to reside outside Monroe County, (*see* **County Exhibit 6**) (County Appendix at 39) and the Plaintiff challenged that denial in New York State Supreme Court.

22. In 2010 a second IA investigation was opened regarding the Plaintiff's failure to establish residency in Monroe County.

23. The Plaintiff did not do anything to follow up with the Knollwood Manor apartment between 2005 and 2010.

24. In April of 2010 the Plaintiff was served with new disciplinary charges regarding his failure to establish residency within Monroe County.

25. During a plea meeting regarding these charges the Plaintiff was told that he could be prosecuted for falsely filing documents attesting to an address in Knollwood Manor Apartments pursuant to New York Penal Law § 175.05.

26. The Plaintiff resigned from his employment. He discussed the matter with his Union Attorney, Pat Naylon. When he had decided to resign his Attorney prepared a letter of resignation, and the Plaintiff signed it and it was submitted to the Sheriff.

27. After he resigned his employment, the Plaintiff decided that he did not want to resign. The Plaintiff through his current Attorneys then submitted various correspondence to the Sheriff and Sheriff's Office seeking to rescind his resignation.

28. Monroe County never responded to the Plaintiff's attempts to rescind his resignation.

29. The Plaintiff then brought this lawsuit.

Def.s' Local Rule 56 Statement of Material Facts to Which There Is No Genuine Issue, Jun. 27, 2016, ECF No. 37-3.

As previously indicated of the 29 paragraphs, Plaintiff objects to only one, number 21, writing the following:

> It is admitted that the County of Monroe sent the plaintiff a letter denying his request to reside outside Monroe County (County Exhibit 6). The plaintiff denies that "the County," as represented by Sheriff O'Flynn did so, and counter-alleges that Sheriff Patrick O'Flynn met with the plaintiff on or about May 10, 2004 and advised him that having a post office box and a mailing address within Monroe County would be sufficient for purposes of the residency requirement **(Exhibit B** to Appendix to Local Rule 56 statement, pp.16-24). The plaintiff also counter-alleges that Sheriff O'Flynn approved the plaintiff[']s use of an address within Monroe County even though the plaintiff was not residing there **(Exhibit B** to Appendix to Local Rule 56 statement, pp.35-36).

Plaintiff's Response to Defendants' Local Rule 56 Statement ¶ 21, Dec. 29, 2016, ECF No. 45-4.

## STANDARD OF LAW

### *Summary Judgment*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ... demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim."

*Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Id.* at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## ANALYSIS

As the defense correctly points out, Plaintiff has argued only that the second cause of action should not be dismissed. He has not opposed the defense motion to dismiss the first and third causes of action. Accordingly, the first and third causes are dismissed.

Turning to the second cause of action, it reads in full as follows:

**AND AS FOR A SECOND CAUSE OF ACTION: VIOLATION OF DUE PROCESS: NO RATIONAL BASIS FOR DIFFERENTIAL TREATMENT OF DEPUTIES IN THE POLICE BUREAU VERSUS POLICE OFFICERS UNDER THE NEW YORK PUBLIC OFFICERS LAW SECTION 3.2(b) [sic]**

54. Pla[i]ntiff repeats and realleges each and every allegation contained in paragraphs 1 – 53 as if fully set forth herein.

55. New York State Public Officer Law § 3(2)(b) is unconstitutional in that similarly situated deputies throughout New York State are not treated in a similar manner and there is no rational basis for such disparate treatment.

56. While Monroe County makes spotty attempts to enforce a residency requirement upon Sheriff's Deputies, other jurisdictions such as Nassau County allow Sheriff's deputies to be treated as police officers pursuant to Public Officer Law § 3(2)(b) which grants a statutory exemption so that police officers may reside in a contiguous county.

57. Differential treatment regarding residency between deputies and police officers is irrational as the Police Bureau of the Monroe County Sheriff's Office provides the primary police services to numerous municipalities within Monroe County.

58. Municipalities who rely upon Sheriff's Deputies for policing and who do not maintain their own police department include as follows: Town of Chili, Town of Clarkson, Town of Hamlin, the Town of Mendon, the Town of Parma, the Town of Penfield, the Town of Perinton, the Town of Pittsford, the Town of Sweden, the Town of Rush, the Town of Riga, and the Town of Wheatland.

59. This inconsistent treatment between police and sheriff's deputies flows directly from inconsistent legislation. The New York legislature sometimes enacted statutes that treat police and deputies interchangeably such as the Criminal Procedure Law §1.20(34) (b) which defines a "police officer" to include "sheriffs, under-sheriffs and deputy sheriffs outside of New York City." Meanwhile, when the legislature drafted Public Officers Law § 3.2 (b) [sic], legislators included a specific exemption applicable only to "police officers" but unlike the Criminal Procedure Law failed to include an explicit definition of "police officers".

60. New York State Attorney General Opinions have advised that "sheriffs and deputy sheriffs are now 'police officers' with full police officer powers." See 1998 N.Y. Op. Att'y Gen. 1131. (Sheriffs and deputy sheriffs are subject to section 17-110 of the Election Law which provides that it is a misdemeanor for "any officer or member of any police force" to use official powers to aid, reward or punish a political organization, citizen or officer or member of a police force because of political view or affiliation.) See also 1980 Op. Atty Gen. 240 (Alcohol Beverage Law §128 applies to sheriffs and deputies in that they are police officers.)

61. *There remains no rational basis or legitimate government purpose for differential treatment of police and deputies with regard to residency while at the same time treating them the same for the purposes of criminal procedure, retirement, alcohol beverage control laws and election laws.*

62. The injuries sustained by Plaintiff JAMES R. LANGMEAD include but are not limited to: loss of earnings and full retirement benefits, loss of business opportunities and attorney's fees.

63. By reason of the foregoing, the Plaintiff JAMES R. LANGMEAD has been damaged and demands declaratory relief that there is no rational basis to exclude deputy sheriffs within the police bureau from the statutory exemption for police officers under Public Officers Law § 3.2-b [sic], and thus is unconstitutional in its application, and for damages in excess of the jurisdictional limits of all courts which would otherwise have jurisdiction.

Compl. ¶¶ 54–63, Jan. 4, 2011, ECF No. 1.

The Public Officers Law to which the above portion of the complaint refers reads in pertinent part as follows:

§ 3 Qualifications for holding office...

1. No person shall be capable of holding a civil office who shall not, at the time he or she shall be chosen thereto, have attained the age of eighteen years, ... be a citizen of the United States, a resident of the state, and if it be a local office, a resident of the political subdivision or municipal corporation of the state for which he or she shall be chosen, or within which the electors electing him or her reside, or within which his or her official functions are required to be exercised....

2. Neither the provisions of this section or of any general, special or local law, charter, code, ordinance, resolution, rule or regulation, requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he shall be chosen or within which his official functions are required to be exercised, shall apply to the appointment of a person as a member of the police force of any political subdivision or municipal corporation of the state if such person resides (a) in the county in which such political subdivision or municipal corporation is located; or (b) in a county within the state contiguous to the county in which such political subdivision or municipal corporation is located; or (c) in a county within the state contiguous to such political subdivision or municipal corporation; or (d) in a county within the state contiguous to a county described in item (c) hereof

where the former is less than fifteen miles from such political subdivision or municipal corporation, measured from their respective nearest boundary lines; or (e) in a county within the state contiguous to a county described in item (d) hereof where the former is less than thirty miles from such political subdivision or municipal corporation, measured from their respective nearest boundary lines.

N.Y. Pub. Off. L. § 3(1) & (2) (McKinney's 2017).

Plaintiff's papers present two arguments. First, as laid out in the complaint, Plaintiff contends that Defendants' interpretation of the above-referenced statutory section is wrong, and that deputy sheriffs are exempted from the residency requirement. Second, Plaintiff contends that, in any event, Sheriff O'Flynn specifically told him that his use of what the Court characterizes as a ruse residence in Monroe County would be sufficient to meet the requirements of § 3. The Court is unpersuaded by the first argument, and determines that the second one does not present a material issue of fact requiring a trial.

As to his first argument, Plaintiff maintains that the Sheriff's interpretation of the statutory language at issue runs afoul of the Due Process clause of the Fourteenth Amendment. In that regard, Plaintiff, while conceding that the appropriate review is "rational basis," contends that the Sheriff has failed to present any rational basis requiring Plaintiff to reside in Monroe County. Pl.'s Mem. of Law 2.

The Court agrees with Plaintiff that the New York Legislature has defined a deputy sheriff as a police officer. N.Y. Crim. P. Law §1.20(34)(b) (McKinney 2017). What Plaintiff does not as adequately address, however, is New York Public Officer Law Section 3's use of this phrase: "a member of the police force of any political subdivision or municipal corporation of the state...."

Plaintiff argues that he is a police officer with full police powers, citing, *inter alia*, to an opinion of the New York Attorney General. Compl. ¶ 60; Pl.'s Mem. of Law 3–4. As Defendants point out, the exemption to the requirement to be resident in Monroe County depends not on whether Plaintiff is a police officer, but whether members of the Sheriff's Office Police Bureau constitute a "police force" of Monroe County. Case law supports the conclusion that the Sheriff's Police Bureau is not a police force of Monroe County. *See Smelts v. Meloni*, 306 A.D.2d 872, 873 (N.Y. Sup. Ct. App. Div. 4th Dep't 2003) (no employment or respondeat superior relationship between Sheriff of Monroe County and Monroe County); *accord Trisvan v. County of Monroe*, 26 A.D.3d 875, 876 (N.Y. Sup. Ct. App. Div. 4th Dep't 2006).

In that regard, the Court finds Plaintiff's reliance on Opinion 1998-57 of the New York Attorney General misplaced. Opinion 1998-57 mentions, "the current role of the sheriff and his deputies as a police force." 2005 N.Y. Op. Att'y Gen. 57, 1998 WL 34342220 (1998). On this point, the Attorney General was asked whether an Election Law section applied to sheriff's deputies when, by its terms, its application was limited to "[a]ny person who, being a police commissioner or any officer or member of any police force in this state...." *Id.* The Opinion, which construed an Election Law constraint on members of a police force, observed that the Election Law did not define "officer or member of any police force." *Id.* at 2. The Opinion reviewed the history of a 1940 opinion that held the Election Law provision did not apply to a sheriff or deputy sheriff. It noted that in 1940, the term "peace officer" "included a sheriff, undersheriff and deputy sheriff of a county and, as a separate category of peace officer, a policeman of any county, city, town or village." *Id.* at 3. The Opinion concluded that the "distinction between these two cat-

egories seems to be the basis for the conclusion that" the Election Law provision (which in 1940 was codified in the Penal Law) "does not apply to the sheriff." *Id.* "The [1940] opinion also states, immediately prior to its conclusion, that the sheriff is an elective officer with criminal and civil duties." *Id.*

The Opinion also listed subsequent opinions that reached the same conclusion: that a sheriff "is not an officer or member of a police force" within the meaning of the Election Law provision. *Id.* The Opinion then recites the definition of a police officer, which includes sheriffs, undersheriffs and deputy sheriffs. *Id.* at 4. The Opinion concludes that sheriffs and deputy sheriffs "currently are police officers, not peace officers. Their powers under State law are the same as members of any other police department." *Id.* Based on that conclusion, the Opinion further states: "Section 17-110 of the Election Law covers officers and members of a 'police force.' *In our view, sheriffs and deputy sheriffs are members of a police force subject to the Election Law restrictions.*" *Id.* at 4 (emphasis added). The Opinion then relates how sheriff's deputies are the police force for several towns in New York that do not have their own police forces. The Opinion goes on to state: "It makes no sense to distinguish between sheriffs and deputy sheriffs, who are now police officers commonly performing general law enforcement functions, and members of other police departments." *Id.* at 5.

The Opinion also discusses Public Officers Law § 3 and distinguishes the case holdings discussed above from the Opinion's conclusion that the sheriff and sheriff's deputies are members of a police force. It concluded that

> Section 3(2) of the Public Officers Law can be distinguished from [N.Y. Election Law] section 17-110 in that it relates to an exception to residency requirements for holding public office. The cases cited above [which in-

cluded *Mazzo v. County of Monroe*, 58 A.D.2d 1017 (N.Y. App. Div. 4th
Dep't 1977)] rely on legislative intent under the Public Officers Law. Also,
exceptions from a general residence requirement for public officers should
be narrowly construed. Exceptions must be strictly construed so that the
major policy underlying the legislation itself is not defeated.

*Id.* at 7. The Court finds that the Opinion does not provide support for Plaintiff's argument that the police bureau of the Monroe County Sheriff is a "police force" as that term is used in Public Officers Law § 3(2).

The New York Constitution states that "the sheriff and the clerk of each county shall be chosen by the electors once in every three or four years as the legislature shall direct." N.Y. Const. art. XIII, § 13. Although the New York Criminal Procedure Law defines "Sheriffs, under-sheriffs and deputy sheriffs of counties outside of New York City" as police officers, N.Y. Crim. P. Law 1.20(34)(b), the Court is unpersuaded that Plaintiff, a deputy sheriff, is a "member of the police force of any political subdivision or municipal corporation of the state...." N.Y. Pub. Off. Law § 3(2).

The case of *Mazzo v. Monroe County*, 58 A.D.2d 1017 (N.Y. Sup. Ct. App. Div. 4th Dep't 1977), is directly on point. It involved a residency requirement for a deputy sheriff in Monroe County, who contended "he [was] exempt from residence requirements under applicable provisions of the Public Officers Law and that the enforcement of such residence requirements denie[d] him equal protection of the law." *Mazzo*, 58 A.D.2d at 1017. As the Fourth Department stated,

Deputy Sheriffs are local officers within the purview of the Public Officers
Law (*Winkler v. Sheriff of Queens County*, 256 App. Div. 770, 12 N.Y.S.2d
290, *see also*, Public Officers Law, s 2). One of the statutory qualifications
for holding local office is that the officer be a resident of the political subdi-
vision or municipal corporation of the state within which his official functions
are required to be exercised (Public Officers Law, s 3(1)).

*Id.* The *Mazzo* court then defined the central question, which is also the central question present in the case before this Court, writing: "The dispositive issue on this appeal is whether the Sheriff's Department is a police force of the county and whether a deputy sheriff, as a member of the Sheriff's Department, is therefore exempt from the residence requirements of the statute." *Id.* After reviewing the constitutional underpinnings of the Sheriff's Office, and concluding that the Sheriff's deputies "act as the personal agent of the Sheriff in the performance of various civil duties," *id.* (citation omitted), the Fourth Department concluded that the "broader duties of the deputies and broader responsibly of the Sheriff for their acts have traditionally resulted in distinguishing them from other police officers." *Id.* As an elected official with both civil and criminal law responsibilities, Section 3's provisions were meant to apply to the sheriffs and deputy sheriffs in New York, absent an exemption in that same section.

The Court now turns to Plaintiff's contention that he has presented a material issue of fact requiring a trial. At his deposition, Plaintiff responded affirmatively to the following question posed to him: "And you were required, as a Monroe County sheriff [sic], to reside inside Monroe County?" Langmead Dep. 15:16–18.

Plaintiff also testified that he met with Sheriff O'Flynn around May 10, 2004, *id.* 16:6–10, and that the Sheriff stated to him that he could not authorize Plaintiff living outside Monroe County, but that as long as Plaintiff had a post-office box and a mailing address, that would be sufficient, *id.* 20:18–24.

Plaintiff testified that in August 2004, shortly after he moved into a house he purchased outside Monroe County, he was served with written charges by Internal Affairs for his failure to reside in Monroe County. *Id.* 26:25–27:3. He was, at that time, living outside

Monroe County, though he had a post office box in Monroe County. After receiving the written charges, Plaintiff told the Sheriff that he had an address in an apartment complex he could use. *Id.* 27:22–25. Plaintiff plead to the Internal Affairs charge. *Id.* 33:5–10. Plaintiff further testified that he was going to sign a lease for an apartment at 22 Blackwatch Trail, which was in Monroe County, but "couldn't go through with it. [He] couldn't afford it." *Id.* 34:6–7.

Plaintiff received a letter from the Sheriff, dated December 3, 2004, that, in sum and substance, required him to establish residency in Monroe County within a 30-day period. *Id.* 35–12–15. Plaintiff never moved into Monroe County, but provided to the Sheriff the address in Monroe County for the apartment he did not lease as his residence. *Id.* 36:19–24.

Even if the Sheriff did tell Plaintiff in their May 10, 2004, meeting that all he needed to satisfy the residency requirement was a post office box and an address in Monroe County, the subsequent events to which Plaintiff testified satisfactorily show that Plaintiff understood he was, notwithstanding the Sheriff's alleged statement in May, required to establish residency in Monroe County. Further, the Sheriff has no authority to alter the New York Public Officers Law. Therefore, the Court finds no material issue of fact precludes summary judgment.

## CONCLUSION

For the reasons stated above, Defendant's application for summary judgment, ECF No. 37, is granted. The Clerk is directed to enter judgment for the defense and close the case.

IT IS SO ORDERED.

Dated: June 6, 2017
       Rochester, New York

                ENTER:    /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge